[No. E051311. Fourth Dist., Div. Two. June 15, 2011.]

THE PEOPLE, Plaintiff and Respondent, v.
ANTHONY EARL REYNOLDS, Defendant and Appellant.

**COUNSEL**

Alan S. Yockelson, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Kevin Vienna and Scott C. Taylor, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**CODRINGTON, J.—**

I

INTRODUCTION[1]

Defendant Anthony Earl Reynolds appeals from a trial court order on July 6, 2010, in which the court found defendant incompetent to stand trial and ordered him committed to Patton State Hospital (Patton) pursuant to Penal Code section 1370.[2]

Defendant contends the trial court violated his equal protection rights under *In re Banks* (1979) 88 Cal.App.3d 864 [152 Cal.Rptr. 111] [Fourth Dist., Div. Two] (*Banks*), by ordering him confined at Patton in excess of the three-year maximum commitment term under section 1370, subdivision (c)(1). Specifically, defendant argues the trial court erred in not applying his precommitment custody credits when calculating his three-year commitment term at

---

[1] The People's request for judicial notice is granted as to legislative materials, consisting of portions of the 1973–1974 legislative history for Penal Code section 1370. (Evid. Code, §§ 452, subd. (c), 459, subd. (a).) Copies of the judicially noticed materials are attached to the People's request for judicial notice filed on January 13, 2011.

[2] Unless otherwise noted, all statutory references are to the Penal Code.

Patton. Defendant urges this court to reverse the commitment order, with directions that the trial court apply his custody credits against his commitment term at Patton, and find his previous confinement at Patton exceeded the three-year maximum term for the charged offenses. We reject defendant's contentions and affirm the judgment.

## II

## FACTS[3]

On September 30, 2007, defendant set fire to his mother's home, where he had been living in a converted bedroom in the garage. Upon responding to a call reporting the fire, firefighters found a mattress and other items burning inside the converted bedroom. Fire Captain William Schellhous (Schellhous), an arson investigator, attempted to talk to defendant. Defendant scowled, ignored Schellhous, and walked away. Defendant then yelled, " 'We had a fire, so now we get a new house.' "

While interviewing defendant's sister, Schellhous was suddenly struck in the back with a wheel from a wheelbarrow. As Schellhous turned toward defendant, defendant charged toward him. Schellhous stood his ground. Defendant stopped and yelled at the firefighters to get off his property. Schellhous tried to calm down defendant by explaining that the firefighters were only there to put out the fire. Defendant said he knew there was a fire and admitted he had started it.

As the firefighters retreated to their engine for safety, defendant grabbed a pike pole used to prop up the garage door and threw it at the firefighters, fortunately missing them by 10 feet. Schellhous called the police for assistance.

When the police arrived, defendant yelled at the police, refused to comply with orders to get on the ground, and aggressively approached Riverside Police Officer Kean (Kean). Kean subdued defendant with a Taser. Defendant was taken into custody. It was determined defendant was a danger to himself and others.

---

[3] There having been no criminal disposition, the facts are taken from the preliminary hearing.

## III

## CALCULATION OF THE THREE-YEAR COMMITMENT PERIOD

Defendant contends the trial court violated his equal protection rights by not deducting his preconfinement custody credits from his three-year commitment term for competency treatment under section 1370, subdivision (c)(1).

### A. *Factual and Procedural Background*

Defendant pled not guilty to charges of arson of an inhabited structure (§ 451, subd. (b)) and assault on a firefighter with a deadly weapon (§ 245, subd. (c)).

In February 2008, the trial court granted defense counsel's request that defendant be evaluated to determine whether he should assert a mental defense. (Evid. Code, § 1017.) The court found defendant incompetent to stand trial under Penal Code section 1370 on the arson and assault charges, and defendant was admitted to Patton on May 30, 2008. He remained at Patton until July 22, 2009, when defendant was found competent to stand trial under Penal Code section 1368.

In February 2010, the trial court declared doubt as to defendant's mental competence and requested that defendant undergo another section 1368 competency evaluation. On April 27, 2010, the court once again found defendant incompetent to stand trial. The court also determined that defendant had been in custody at Patton in excess of the three-year maximum period permitted under section 1370. Conservatorship proceedings were initiated.

In June 2010, the trial court determined, contrary to its previous finding, that defendant had not exceeded the three-year maximum confinement period under section 1370 and defendant did not qualify for conservatorship. Over defendant's objection, the court referred the matter back to the county mental health department for a placement recommendation.

At the hearing on placement on July 6, 2010, defense counsel again objected to placing defendant at Patton because the three-year maximum confinement period had already been exceeded. The trial court disagreed and found defendant incompetent to stand trial. The court ordered defendant committed to Patton under section 1370. The court calculated defendant's time served as 1,001 actual days, plus 408 days of custody credit (§ 4019). This court and the California Supreme Court denied defendant's petitions for writ review.

## B. *Applicable Law*

▆ "It is well established that the Due Process Clause of the Fourteenth Amendment prohibits the criminal prosecution of a defendant who is not competent to stand trial." (*Medina v. California* (1992) 505 U.S. 437, 439 [120 L.Ed.2d 353, 112 S.Ct. 2572].) "In a competency hearing, the 'emphasis is on [the defendant's] capacity to consult with counsel and to comprehend the proceedings . . . .' " (*Id.* at p. 448.) Section 1367 implements this requirement, providing: "A person cannot be tried or adjudged to punishment while that person is mentally incompetent. A defendant is mentally incompetent for purposes of this chapter if, as a result of mental disorder or developmental disability, the defendant is unable to understand the nature of the criminal proceedings or to assist counsel in the conduct of a defense in a rational manner." (§ 1367, subd. (a).)

▆ A defendant who, as a result of a mental disorder, is adjudged not competent to stand trial on a felony charge may be committed to a state hospital for no more than three years. (§§ 1367, subd. (b), 1370, subds. (a), (c); *People v. Karriker* (2007) 149 Cal.App.4th 763, 780 [57 Cal.Rptr.3d 412].) If, at the end of the three-year period, the medical staff determines there is no substantial likelihood the defendant will regain mental competence in the foreseeable future, the defendant must be returned to the court for further proceedings. (§ 1370, subds. (b), (c); *Karriker*, at p. 781.) The three-year period under section 1370, subdivisions (a) and (c), applies to the aggregate of all commitments for treatment for incompetency regarding the same charges. (*In re Polk* (1999) 71 Cal.App.4th 1230, 1238 [84 Cal.Rptr.2d 389].)

Once an incompetent defendant has been committed for the maximum commitment period, if it appears to the court that the defendant is "gravely disabled," the court shall order the conservatorship investigator to initiate a "Murphy conservatorship." (*People v. Karriker, supra*, 149 Cal.App.4th at pp. 775–777, 781; see § 1370, subd. (c)(2); Welf. & Inst. Code, § 5008, subd. (h)(1)(B).) The court may impose a Murphy conservatorship if it finds the defendant, as a result of a mental disorder, " 'represents a substantial danger of physical harm to others.' " (*Karriker*, at p. 776; see *Conservatorship of Hofferber* (1980) 28 Cal.3d 161, 176–177 [167 Cal.Rptr. 854, 616 P.2d 836].) Alternatively, the court can dismiss the charges and order the defendant released, without prejudice to the initiation of alternative commitment proceedings under the Lanterman-Petris-Short Act.[4] (§ 1370, subd. (e); *In re Davis* (1973) 8 Cal.3d 798, 806 [106 Cal.Rptr. 178, 505 P.2d 1018].)

---

[4] Welfare and Institutions Code section 5000 et seq.

## C. *Discussion*

Section 1370 provides a limit on the duration of time a defendant can be committed to a state hospital for incompetency treatment. Under section 1370, subdivision (c)(1), "At the end of three years from the date of commitment or a period of commitment equal to the maximum term of imprisonment provided by law for the most serious offense charged in the information, indictment, or misdemeanor complaint, whichever is shorter, a defendant who has not recovered mental competence shall be returned to the committing court. The court shall notify the community program director or a designee of the return and of any resulting court orders."

Relying on *Banks, supra*, 88 Cal.App.3d 864, defendant argues the trial court erred in not taking into account his precommitment custody credits, when determining whether he had exceeded the three-year maximum commitment period under section 1370, subdivision (c)(1). In *Banks*, the defendant was found guilty of misdemeanor brandishing a deadly weapon (§ 417, subd. (a)). (*Banks*, at p. 866.) Before the sanity phase began, the trial court found the defendant incompetent to stand trial (§ 1368) and committed the defendant to a state hospital. The defendant had already been in confinement for 60 days during prosecution of the charges because he was unable to make bail. (*Banks*, at p. 866.) The applicable maximum commitment term in *Banks* was measured by "the maximum term of imprisonment provided by law for the most serious offense charged in the information" (§ 1370, subd. (c)(1)), since the defendant's potential criminal sentence was less than three years.

The issue in *Banks* was whether the trial court erred in not taking into account the defendant's precommitment custody credits when calculating the defendant's maximum commitment time under section 1370. In addressing the issue, the *Banks* court acknowledged that, under section 1370, the "time of commitment started the clock running" on the three-year commitment period. (*Banks, supra*, 88 Cal.App.3d at p. 867.) The *Banks* court also noted that section 2900.5 provides for custody credit only after a defendant has been convicted of a criminal offense, and the defendant in *Banks* had not been convicted, since proceedings were suspended prior to the insanity phase. (*Banks*, at p. 867.)

Nevertheless, the *Banks* court concluded that, although section 2900.5 "clearly gave the [defendant] no credit for precommitment custody, principles of equal protection and due process of law mandate that credit." (*Banks, supra*, 88 Cal.App.3d at p. 867.) This was consistent with the legislative purpose of enacting section 2900.5 "to eliminate the unequal treatment suffered by indigent defendants who, because of their inability to post bail, served a longer overall confinement than their wealthier counterparts." (*In re Rojas* (1979) 23 Cal.3d 152, 156 [151 Cal.Rptr. 649, 588 P.2d 789].)

The *Banks* court further reasoned that, "For purposes of equal protection, we can perceive no logical distinction between the application of credit against an actual sentence and the application of credit against a sentence term *used to measure the maximum permissible duration of an incompetency commitment*. In either case, the denial of credit necessarily results in longer confinement for indigents unable to post bail bonds. This discriminatory treatment is constitutionally forbidden." (*Banks, supra,* 88 Cal.App.3d at p. 869, italics added & fn. omitted.)

The instant case is distinguishable from *Banks* in that defendant's maximum commitment term is not measured by his maximum potential criminal sentence of nine years four months, which is far in excess of the alternative three-year maximum for commitment under section 1370. Defendant nevertheless argues that, just as in *Banks*, defendant's precommitment custody credits must be considered when determining whether defendant exceeded the three-year maximum commitment period.

■ We disagree. The equal protection rationale relied on in *Banks, supra,* 88 Cal.App.3d 864, is inapplicable here where the maximum competency term is the three-year limit, rather than the alternative limit based on the defendant's maximum sentence term. In enacting section 1370, the Legislature determined that the three-year confinement period was a reasonable maximum period of time to hold those found incompetent, in an attempt to bring them to competency. (§ 1370.) The purpose of section 1370 "is restoration of a specific mental state without which the criminal process cannot proceed." (*People v. Waterman* (1986) 42 Cal.3d 565, 569 [229 Cal.Rptr. 796, 724 P.2d 482].)

Unlike in *Banks, supra,* 88 Cal.App.3d 864, here, disregarding custody credits does not result in any disparity between commitment by those capable of posting bond and those incapable of doing so because of indigency, since a defendant's commitment term is not based on the length of the defendant's potential criminal sentence. Indigent defendants are not required to spend more time in confinement than their wealthier counterparts since indigent defendants' custody credits would remain applicable to their criminal sentences in the event of rehabilitation.

In the instant case, where the commitment period is not measured by defendant's maximum sentence, because the sentence is longer than the maximum three-year commitment period, defendant's time in custody for

committing a crime would be the same as that of a defendant who has posted bail and has no precommitment custody credits. This is because defendant is entitled to apply his precommitment credits against his custody time serving his criminal sentence, if rehabilitated, tried, and convicted. We thus conclude that nonapplication of precommitment custody credits to defendant's three-year commitment period does not violate his equal protection rights. There being no equal protection violation, the trial court was not required to deduct defendant's precommitment custody credits from his three-year commitment period when calculating his commitment term.

Defendant argues that, although *People v. Callahan* (2006) 144 Cal.App.4th 678 [50 Cal.Rptr.3d 677] (*Callahan*) is distinguishable, it supports the equal protection holding in *Banks*. Defendant acknowledges that *Callahan* does not directly address the issue raised in the instant case, of whether custody credits apply to the three-year commitment period.

In *Callahan*, the court found the trial court improperly deducted from the defendant's three-year commitment term the defendant's pretrial custody credits under sections 2900.5 and 4019, for time spent in a state hospital on an insanity commitment under section 1026. During his insanity commitment, the defendant committed a new offense, battery upon a hospital guard. (*Callahan, supra*, 144 Cal.App.4th at p. 681.) The defendant in *Callahan* was found to be incompetent to stand trial on the new charge, and was ordered committed to the hospital for a maximum of three years, until his competency was restored. The *Callahan* defendant's competency never was restored to the extent he was competent to stand trial on the new charge. (*Id.* at pp. 682–683.)

The issue in *Callahan* was whether, when the trial court calculated the defendant's commitment term arising from the new charge, the defendant was entitled to custody credit for his confinement, during which he was in custody, not because of the new charge, but because of a preexisting, unrelated insanity commitment. (*Callahan, supra*, 144 Cal.App.4th at pp. 685–687.) This is not the issue in the instant case. Defendant was not already in custody when he committed the charged offenses.

■ We conclude the trial court properly ordered defendant committed to Patton under section 1370 since he had not been confined at Patton in excess of the maximum term of three years. In determining whether defendant's previous confinement exceeded the maximum three-year period, the court correctly disregarded defendant's precommitment custody credits, and there was no violation of defendant's equal protection rights in doing so.

## IV

## DISPOSITION

The judgment is affirmed.

Ramirez, P. J., and Miller, J., concurred.

Appellant's petition for review by the Supreme Court was denied October 12, 2011, S195006.