Filed 10/30/14

**CERTIFIED FOR PUBLICATION**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E059718 |
| v. | (Super.Ct.No. RIF10002279) |
| G.H., | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County. Mark E. Johnson, Judge. Affirmed.

Steven L. Harmon, Public Defender, and Lisa M. Larson, Deputy Public Defender, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, A. Natasha Cortina, Brendon W. Marshall and Peter Quon, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant G.H. appeals from an order of the trial court correcting a previous order awarding defendant precommitment custody credits for time served

1

against his three-year commitment to Patton State Hospital (Patton) pursuant to Penal Code[1] section 1368 et seq. On appeal, defendant argues that (1) section 1370, subdivision (a)(3)(C), mandates the trial court to deduct defendant's precommitment custody credits from the maximum term of commitment; and (2) the denial of precommitment custody credits based upon the level of crime alleged violates a defendant's rights to due process and equal protection. We reject defendant's contentions and affirm the judgment.

I

FACTUAL AND PROCEDURAL BACKGROUND

On May 7, 2010, a complaint was filed charging defendant with felony elder abuse likely to produce great bodily harm and death (§ 368, subd. (b)(1)); assault by means of force likely to produce great bodily injury (§ 245, subd. (a)(1)); and misdemeanor elder abuse likely to produce great bodily harm or death (§ 368, subd. (c)).

On September 8, 2010, defendant was arraigned, pled not guilty, and was remanded to the custody of the Riverside County Sheriff.

On September 17, 2010, defense counsel declared a doubt as to defendant's competency to stand trial pursuant to section 1368. As a result, the trial court suspended criminal proceedings and appointed Drs. Craig C. Rath and Harvey Oshrin to evaluate defendant and to furnish the court with reports. The court also ordered the county jail psychiatrist to examine defendant.

---

[1] All future statutory references are to the Penal Code unless otherwise stated.

On December 13, 2010, after reading and considering the reports of Drs. Oshrin and Rath, the trial court found that defendant was mentally incompetent to stand trial. The court referred the matter to Riverside County Mental Health for a recommendation regarding defendant's placement.

On January 25, 2011, the trial court again found defendant mentally incompetent to stand trial and committed defendant to Patton until competent to stand trial, not to exceed a period of three years minus credit for time served. The court awarded defendant 143 days of actual custody credits and 142 days of conduct credits pursuant to section 4019, for a total of 285 days precommitment credits.

On April 24, 2013, the court held a hearing pursuant to section 1370, subdivision (b)(1), and provided the parties with copies of reports from Patton. The court ordered defendant to be referred to the public guardian for evaluation for conservatorship pursuant to Welfare and Institutions Code section 5008.

On August 21, 2013, the court held a hearing concerning conservatorship status and noted that defendant would reach his maximum commitment period at Patton on September 4, 2013. The court requested an updated status report from the public guardian's office and Patton, and ordered both entities to submit the reports by September 3, 2013.

At the September 3, 2013 conservatorship status hearing, the court and counsel discussed defendant's maximum commitment date and agreed to continue the hearing.

On September 5, 2013, defense counsel filed a motion to release defendant from Patton, noting the three-year maximum commitment period had expired when his

3

precommitment custody credits are applied against the three-year maximum commitment date. The People filed an opposition the following day, asserting that under this court's decision in *People v. Reynolds* (2011) 196 Cal.App.4th 801 (*Reynolds*) [Fourth Dist., Div. Two], defendant was not entitled to have his jail time plus section 4019 credits used to reduce the three-year commitment period under section 1370.

A hearing on defendant's motion was held on September 16, 2013. Following argument from counsel, the court found that defendant was not entitled to precommitment custody credits for time served against his three-year maximum period of confinement. The court noted that the previous order awarding defendant credits against his commitment period was in error, returned defendant to Patton, and amended defendant's three-year maximum confinement date to January 11, 2014.

On September 25, 2013, defendant filed a timely notice of appeal.[2]

II

DISCUSSION

Defendant argues that section 1370, subdivision (a)(3)(C), mandates the trial court to deduct defendant's precommitment custody credits from the maximum term of commitment. Defendant also asserts that the denial of precommitment custody credits

---

[2] We note that on October 15, 2013, and again on November 5, 2013, when the superior court clerk could not locate the first document, defendant's counsel filed a petitioner for a writ of habeas corpus in the superior court. The trial court denied defendant's petition for writ of habeas corpus on November 6, 2013. Defendant then filed a petition for writ of habeas corpus in this court (case No. E060079) on November 22, 2013, which was summarily denied.

4

based upon the level of crime alleged violates a defendant's rights to due process and equal protection under the law.

Section 1370, subdivision (c)(1), provides, in pertinent part: "At the end of three years from the date of commitment or a period of commitment equal to the maximum term of imprisonment provided by law for the most serious offense charged in the information, . . . whichever is shorter, a defendant who has not recovered mental competence shall be returned to the committing court."

Two decisions from this court govern this case, *In re Banks* (1979) 88 Cal.App.3d 864 (*Banks*) [Fourth Dist., Div. Two] and *Reynolds*.

In *Banks*, *supra*, 88 Cal.App.3d 864, the defendant, who had been found guilty of a misdemeanor which carried a maximum sentence of six months, was declared incompetent before the sanity phase of his trial commenced. (*Id*. at pp. 866-867.) Under the provisions of section 1370, subdivision (c), the defendant could not be confined in the state hospital for longer than six months. (*Banks*, at pp. 866-867.) The defendant had already spent over 60 days in jail, presumably due to his indigence and inability to make bail. And, after spending additional time in a state hospital, *for a total of six months*, he petitioned this court for a writ of habeas corpus to be released. (*Ibid*.) We rejected the defendant's contention that he was entitled to add the time he spent in jail before being committed to the state hospital to the time he spent in the state hospital for purposes of calculating the maximum duration of his commitment under section 1370, subdivision (c), and agreed with the People that the "time of commitment" to the state hospital began the clock running for the maximum duration. (*Banks*, at p. 867.)

5

However, this court ultimately held that principles of equal protection and due process of law mandated such credits under the circumstances of that case. (*Banks*, *supra*, 88 Cal.App.3d at p. 867.) This court reasoned: "For purposes of equal protection, we can perceive no logical distinction between the application of credit against an actual sentence and the application of credit against a sentence term used to measure the maximum permissible duration of an incompetency commitment. In either case, the denial of credit necessarily results in longer confinement for indigents unable to post bail bonds. This discriminatory treatment is constitutionally forbidden." (*Id*. at p. 869, fn. omitted.) This court noted that once the period of confinement to a state hospital ends under the provisions of section 1370, the criminal cases of most defendants are dismissed under section 1385, "[t]hus for all practical purposes[,] the expiration of the incompetency commitment is the end of the criminal proceeding." (*Id*. at p. 869, fn. 2.) This court also noted that if the defendant recovered his competency and was sentenced for his misdemeanor conviction, any sentence he received would be reduced by the time he spent in jail and in the hospital, therefore, he "became immune from postsentence confinement" when he had been in both jail and the hospital for a total of six months, even though his six months in the hospital was not yet up. (*Id*. at p. 870.) This court concluded that under the circumstances, the state had no interest in continuing a criminal case against this defendant, who had acquired immunity to postsentence punishment due to his time in jail and the hospital.[3] (*Ibid*.)

_____

[3] This court accepted that in other cases, the state may have such an interest, for

*[footnote continued on next page]*

In *Reynolds*, the defendant had been charged with, inter alia, a crime whose maximum term was eight years. (*Reynolds*, *supra*, 196 Cal.App.4th at p. 805.) After spending about eight months in jail, he was declared incompetent and committed to Patton, where he remained for almost 14 months. (*Id*. at p. 805.) After the defendant spent almost another year in jail, he was again declared incompetent and committed to Patton, over his objection that he had already spent longer than the three-year period provided by section 1370 at Patton, if he was credited under both sections 2900.5 and 4019 for his time in jail. (*Ibid*.) We rejected his contention that he was entitled to these credits under *Banks*. This court reasoned: "[T]he *Banks* court concluded that . . . 'principles of equal protection and due process of law mandate . . . credit' [for precommitment custody.] [Citation.] This was consistent with the legislative purpose of enacting . . . [the] section [governing the award of credit for presentence jail time] 'to eliminate the unequal treatment suffered by indigent defendants who, because of their inability to post bail, served a longer overall confinement than their wealthier counterparts.' [Citation.] [¶] . . . [¶] The instant case is distinguishable from *Banks* in that defendant's maximum commitment term is not measured by his maximum potential

_____

*[footnote continued from previous page]*
example, when the current offense serves as an enhancement for a later committed offense or when the current offense would require a defendant to register as a sex offender or serve as the basis for revoking a defendant's driver's license or to prohibit a defendant from possessing a gun. (*Banks*, *supra*, 88 Cal.App.3d at p. 870.) However, none of those situations applied in *Banks*.

criminal sentence of nine years four months,[4] which is far in excess of the alternative three-year maximum for commitment under section 1370. . . . [¶] . . . The equal protection rationale relied on in *Banks* . . . is inapplicable here where the maximum competency term is the three-year limit, rather than the alternative limit based on the defendant's maximum sentence term. . . . [¶] Unlike in *Banks*, . . . disregarding custody credits does not result in any disparity between commitment by those capable of posting bond and those incapable of doing so because of indigency, since a defendant's commitment term is not based on the length of the defendant's potential criminal sentence. Indigent defendants are not required to spend more time in [total] confinement than their wealthier counterparts since indigent defendants' custody credits would remain applicable to their criminal sentences in the event of rehabilitation. [¶] . . . [W]here . . . the sentence is longer than the maximum three-year commitment period, defendant's time in custody . . . [is] the same as that of a defendant who has posted bail and has no precommitment custody credits. This is because defendant is entitled to apply his precommitment credits against his custody time serving his . . . sentence, if rehabilitated, tried and convicted. We thus conclude that nonapplication of precommitment custody credits to defendant's three-year commitment does not violate his equal protection rights." (*Id.* at p. 807-809.)

---

[4] This is based not on the maximum potential sentence for the greatest offense charged, i.e., in that case, arson, but on the maximum potential sentence for both charged offenses, i.e., eight years for arson plus a consecutive one-third of the midterm for assault on a firefighter.

The holding in *Banks* and the holding in *Reynolds* can be reconciled in this case as follows: For a defendant whose competency is restored, if the potential total sentence he or she is facing is long enough to give him or her a benefit for any time spent in jail by having that time credited towards his or her sentence, then equal protection and due process principles do not require that the commitment to the state hospital be reduced by those credits, as they will be rewarded when defendant is finally sentenced, thus equalizing his standing with a similar defendant who avoided jail time by posting bail. For a defendant whose competency is not restored, the equal protection/due process compulsion to award credits does not exist because equality is necessary only in terms of the sentence imposed. Just as with a defendant who is eventually acquitted of a crime, but who served jail time and is therefore disadvantaged when compared with an acquitted counterpart who posted bail and served no jail time, a person whose competency is not restored will have served jail time without any credit because the purpose of credits is actually to equalize sentences, not commitments to restore sanity.

Here, defendant faced a maximum sentence of five years.[5] Even if the trial court had awarded credits for 143 actual days, and 142 days of conduct credits under section

_____

[5] This is based on a four-year maximum term for either felony elder abuse likely to produce great bodily harm or death (§ 368, subd. (b)(1)) or assault by means of force likely to produce great bodily injury (§ 245, subd. (a)(1)), combined with a consecutive one-third of the midterm sentence for the remaining charged offense. The maximum sentence for felony elder abuse likely to produce great bodily harm and death in violation of section 368, subdivision (b)(1), is four years; and the sentencing range is two, three, or four years in state prison. (§ 368, subd. (b)(1).) The sentencing range for assault by means of force likely to produce great bodily injury in violation of section 245, subdivision (a)(1), is two, three, or four years in state prison. (§ 245, subd. (a)(1).)

4019, for a total of 285 days, the three-year commitment plus this time would not exceed defendant's projected maximum sentence.  Therefore, defendant would benefit from his jail time by being awarded credits for it when he was eventually sentenced, should his competency be restored.  If it was not, under *Reynolds*, there would be no violation of due process or equal protection for him to not derive a benefit from his jail time.

Defendant asserts that *Reynolds* was wrongly decided.  However, defendant provides no persuasive argument why this is so in either of his briefs.  At oral argument, defendant's appellate counsel maintained that this court needs to reconsider or disapprove *Reynolds* because it failed to address section 1370, subdivision (a)(3).  To address appellate counsel's concerns, we shall clarify *Reynolds*.

As previously noted, section 1370, subdivision (a)(3)(C), states:  "(3) When the court orders that the defendant be committed to the State Department of State Hospitals or other public or private treatment facility, the court shall provide copies of the following documents prior to the admission of the defendant to the State Department of State Hospitals or other treatment facility where the defendant is to be committed: [¶] . . . [¶]  (C) *A computation or statement setting forth the amount of credit for time served, if any, to be deducted from the maximum term of commitment*."  (Italics added.)

Initially, we note that our Supreme Court has held that a defendant is not entitled to conduct credits against his or her sentence when a defendant later recovers competence and was tried and convicted.  (*People v. Waterman* (1986) 42 Cal.3d 565, 571 (*Waterman*) [California Supreme Court rejected a defendant's equal protection claim that he was entitled to earn conduct credit for the presentence time spent in a state hospital

10

following a finding of incompetency since offenders committed for narcotics addiction received such credit]; see *People v. Callahan* (2006) 144 Cal.App.4th 678, 682-683.) "Specifically, conduct credit cannot be awarded for pretrial confinement on a finding of incompetency to stand trial, because sentence credits for good behavior are 'particularly inconsistent' with the therapeutic goals of treating a defendant so that his competency can be restored. [Citation.] 'The purpose of confinement is to restore the mental ability to stand trial. . . . [T]hat goal would be hindered if mere institutional good behavior and participation automatically reduced the therapy period. [Citation.]' [Citation.]" (*Ibid.*, citing and quoting *Waterman* at p. 570.)

Section 1370, subdivision (c)(1)'s three-year statutory limit applies to the total period actually spent in commitment at a mental institution. (*In re Polk* (1999) 71 Cal.App.4th 1230, 1238.) The three-year limit is intended to comply with due process requirements by limiting commitment to the period reasonably necessary to permit treatment for incompetence. (See *Conservatorship of Hofferber* (1980) 28 Cal.3d 161, 168 (*Hofferber*).) Under section 1370, credit for time served in prison may be used to reduce the period of commitment when that period is measured based on the maximum term of imprisonment. (§ 1370, subd. (c)(1); see § 1370, subd. (a)(3)(C).) However, we do not read section 1370 as extending prison credit to commitments subject to the three-year maximum, because such a reduction bears no relation to the period reasonably necessary to permit actual treatment. Section 1370, subdivision (c)(1), can be read as providing for commitment for up to three years, but in no event for any period longer than would have been served had the defendant been convicted. Consequently,

11

precommitment custody credits should not be applied to reduce the three-year maximum period of commitment if the maximum term of imprisonment is greater than three years. The purpose of section 1370 is to provide a defendant the maximum term possible, not to exceed three years or the maximum period of imprisonment for a charged crime such as a misdemeanor offense as explained in *Banks, supra*, 88 Cal.App.3d 864, to restore his or her competency. In short, the therapeutic purpose of incompetency confinement in a state hospital has little, if anything, to do with the statutory credit available to a competent defendant held in jail prior to trial.

The Legislature enacted section 1370 with the purpose of providing treatment to mentally incompetent persons in order to restore their competency, not as a form of punishment. As such, where a defendant is charged with crimes wherein the maximum term of confinement exceeds the three-year period of confinement, a defendant is not entitled to have his or her precommitment credits deducted against his or her maximum term of confinement.

We must construe the commitment limitation provisions of section 1370, subdivision (c)(1), in a manner which will effectuate the legislative intent. (*People v. Cruz* (1996) 13 Cal.4th 764, 782 (*Cruz*); *People v. Woodhead* (1987) 43 Cal.3d 1002, 1007 (*Woodhead*).) In determining such intent, "we look first to the words themselves." (*Woodhead* at p. 1007; *Cruz, supra*, at p. 782; *People v. Overstreet* (1986) 42 Cal.3d 891, 895.) "It is a paramount canon of statutory construction that statutes should be given effect according to the usual and ordinary import of the words used in the statute." (*Guedalia v. Superior Court* (1989) 211 Cal.App.3d 1156, 1160.) "When the language is

susceptible of more than one reasonable interpretation, however, we look to a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part. [Citations.]" (*Woodhead*, *supra*, at p. 1008.) "To the extent that uncertainty remains in interpreting statutory language, 'consideration should be given to the consequences that will flow from a particular interpretation' [citation], and both legislative history and the 'wider historical circumstances' of the enactment may be considered. [Citation.] Further, ambiguities are not interpreted in the defendant's favor if such an interpretation would provide an absurd result, or a result inconsistent with apparent legislative intent. [Citation.]" (*Cruz, supra*, at pp. 782-783.)

Section 1370, subdivision (c)(1), limits commitment to the lesser of either three years or "the maximum term of imprisonment provided by law for the most serious offense charged in the information, indictment or misdemeanor complaint." If a single accusatory pleading has been filed against a criminal defendant, the statute plainly mandates that he be returned to the court for redetermination of competency after (1) three years, or (2) the maximum term of imprisonment for the most serious offense charged in that pleading. (*Waterman*, *supra*, 42 Cal.3d at p. 568; *Hofferber*, *supra*, at p. 169.)

Applying section 1370, subdivision (a)(3)(C), to reduce a defendant's three-year maximum term of commitment under the circumstances of this case would defeat the legislative purpose, public policy, and statutory scheme of which the statute if part of.

Section 1370 is part of a "comprehensive scheme for dealing with criminal defendants whose mental competency is suspect." (*People v. Bye* (1981) 116 Cal.App.3d 569, 571.) The statutory scheme provides that, upon a finding of a defendant's incompetence to stand trial, criminal proceedings shall be suspended, and the defendant committed for treatment designed to restore his or her competence. (§§ 1367-1370; *Waterman*, *supra*, 42 Cal.3d at p. 568.) A defendant found mentally incompetent to stand trial is not subject to criminal sanctions. (*People v. Mayes* (1988) 202 Cal.App.3d 908, 914-915.) The primary purpose of the pretrial confinement of incompetent defendants is neither punishment nor rehabilitation, but the restoration of that specific mental state without which the criminal process cannot proceed. (*Waterman*, *supra*, at p. 569.)

As such, in our view, neither due process principles nor statutory objectives are compromised by construing section 1370, subdivision (c)(1), in a manner which authorizes commitment for the maximum term for the most serious offense charged in an accusatory pleading pending against a criminal defendant adjudged incompetent to stand trial without deducting a defendant's precommitment custody credits from the maximum term of commitment. The objective of restoring mental competence without unjustifiable confinement is not violated by requiring that the commitment expire no later than the termination of a period equal to the total of the maximum possible sentence for the most serious offenses charged or the maximum commitment period of three years. A commitment of unwarranted duration is precluded by the requirement of periodic reports from the director of the commitment facility to which the defendant has been committed "concerning the defendant's progress toward recovery of mental competence," and the

14

mandatory termination of the commitment upon either restoration of competence or a finding in any report "that there is no substantial likelihood that the defendant will regain mental competence in the foreseeable future . . . ."  (§ 1370, subd. (b)(1).)  The maximum potential duration of pretrial confinement of an incompetent defendant under section 1370 can in no event exceed the maximum possible criminal sentence or the maximum period of three years, and, if competence is restored, criminal proceedings resume.  (§ 1370, subd. (a)(1); *Waterman*, *supra*, 42 Cal.3d at p. 568.)[6]

## III

## DISPOSITION

The judgment is affirmed.

CERTIFIED FOR PUBLICATION

RAMIREZ _____
P. J.

We concur:

KING _____
J.

MILLER _____
J.

---

[6] Finally, we observe that, according to the record, defendant's commitment to Patton was set to expire on January 11, 2014.  Since we are past that date, and we presume that defendant is no longer being held at Patton pursuant to his commitment, the matter is actually moot.

15