[Crim. No. 4485. Fifth Dist. June 23, 1981.]

THE PEOPLE, Plaintiff and Respondent, v.
ROGER DALE SMITH, Defendant and Appellant.

**COUNSEL**

Howard J. Berman, under appointment by the Court of Appeal, for Defendant and Appellant.

Quin Denvir, State Public Defender, and Paul D. Fogel, Deputy State Public Defender, as Amici Curiae on behalf of Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Joel Carey and J. Robert Jibson, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**BROWN (G. A.), P. J.**—We filed our former opinion in this cause, holding that no equal protection or due process violation occurs when a defendant found insane at the time of the offense is committed to a state hospital for a maximum term equal to the upper base term for the underlying offense absent aggravating circumstances. We further held that while such a defendant is statutorily entitled to credit for actual

time spent in precommitment confinement, his maximum term is not to be reduced by conduct credits for the precommitment period.

After our former opinion became final as to this court, we discovered an inadvertent error in the opinion's dispositional language. Accordingly, at our request, the Supreme Court granted a hearing and transferred the case to this court. Learning that we would be modifying the disposition herein, the State Public Defender sought leave to file an amicus brief addressed to the conduct credit issue. Leave was granted and an amicus brief was filed, in which several points are raised. Neither appellant's appointed appellate counsel nor respondent has filed additional briefing.

After further consideration, we have decided that our original conclusion was correct. We refile the opinion with some additional discussion of the points raised by the amicus.

Appellant, Roger Dale Smith, was convicted upon his plea of guilty to arson (Pen. Code, § 447a). On his plea of not guilty by reason of insanity, appellant was found insane at the time of the offense pursuant to Penal Code section 1026 and was committed to a state hospital for treatment. Though the court specifically found that there were no aggravating circumstances, appellant was committed to a maximum term equal to the four-year upper base term for the underlying arson. The court also denied precommitment credits for actual time served pursuant to Penal Code section 2900.5 and conduct credits. Appellant challenges his commitment for a maximum period equal to the upper base term and the denial of precommitment credit for actual time served and conduct credits.[1]

---

[1] The procedural chronology in this case is a nightmare. The record reflects that the offense occurred July 24, 1977, on which date appellant apparently was arrested. After the first information was filed, criminal proceedings were suspended pursuant to Penal Code section 1368 et seq. After being held and examined at Tulare View Hospital, appellant was found mentally incompetent and committed to Patton State Hospital on November 4, 1977. On or about October 2, 1978, appellant was returned from Patton State Hospital and on October 3, 1978, criminal proceedings were reinstated. Thereafter, section 1368 et seq. proceedings were again initiated but appellant was found competent. However, the first information was dismissed pursuant to Penal Code section 995. On March 8, 1979, a new information was filed. Thereafter, for the third time, section 1368 et seq. proceedings were initiated. The trial court found appellant competent. Ultimately, appellant was adjudged not guilty by reason of insanity and committed to Patton State Hospital. The record thus reflects that before this ultimate commitment appellant spent unspecified periods of time at Patton State, Tulare View Hospital and jail.

In *People* v. *Saffell* (1979) 25 Cal.3d 223 [157 Cal.Rptr. 897, 599 P.2d 92] the Supreme Court held that a maximum commitment for treatment of a mentally disordered sex offender (MDSO) automatically keyed to the upper term for the underlying crime(s) and excluding conduct credits for the period of in-hospital confinement did not violate equal protection.

█ Appellant argues that he was denied due process and equal protection of the law because his maximum term of confinement is longer than the term of imprisonment he would have received had he not been found to be insane under Penal Code section 1026. In *Saffell* the court rejected an equal protection attack on Welfare and Institutions Code section 6316.1,[2] pointing out that while fundamental interests of personal liberty are involved (*Saffell*, at p. 228 of 25 Cal.3d), the state has a compelling interest in the confinement of persons for the purpose of treatment rather than punishment (*Saffell*, at p. 229 of 25 Cal.3d). The court pointed out that being an MDSO is a status, not a crime, and confining such a person for the purpose of treatment rather than to punish him by sending him to state prison is not a violation of equal protection. The court concluded that a valid comparison cannot be drawn between a person committed for treatment of a mental condition and a person committed for punishment for having committed a criminal offense.

*In re Moye* (1978) 22 Cal.3d 457 [149 Cal.Rptr. 491, 584 P.2d 1097] concerns a defendant who was found not guilty by reason of insanity and was committed to a state hospital for treatment pursuant to Penal Code section 1026. In that case the court observed: "As we have noted, by reason of their commission of a prior criminal act and the finding of a mental disorder justifying the initial commitment, persons committed as MDSOs are 'similarly situated' with persons like petitioner." (*Id.*, at p. 466.)

---

[2]At all times pertinent hereto, Welfare and Institutions Code section 6316.1 provided in relevant part: "(a) In the case of any person found to be a mentally disordered sex offender who committed a felony on or after July 1, 1977, the court shall state in the commitment order the maximum term of commitment, and the person may not be kept in actual custody longer than the maximum term of commitment, except as provided in Section 6316.2. For the purposes of this section, 'maximum term of commitment' shall mean the longest term of imprisonment which could have been imposed for the offense or offenses of which the defendant was convicted, including the upper term of the base offense and any additional terms for enhancements and consecutive sentences which could have been imposed less any applicable credits as defined by Section 2900.5 of the Penal Code and disregarding any credits which could have been earned under Sections 2930 to 2932, inclusive, of the Penal Code."

The court concluded: "Specifically, we hold that principles of equal protection require (subject to the availability of either an extended commitment as outlined below, or a civil commitment under the LPS act) that persons committed to a state institution following acquittal of a criminal offense on the ground of their insanity cannot be retained in institutional confinement beyond the maximum term of punishment for the underlying offense of which, but for their insanity, they would have been convicted. To the extent practicable, and in the absence of further legislation applicable to commitments under Penal Code section 1026, calculation of the maximum term of punishment should be made in accordance with the principles expressed in section 6316.1 of the Welfare and Institutions Code." (Id., at p. 467.)

The statute pursuant to which appellant's maximum term was fixed was the exact one which was upheld in *Saffell* and which *Moye* required be applied to the instant case. Accordingly, though there was no evidence in aggravation, the court did not err in committing appellant to a mental treatment facility for a maximum term equal to the upper base term for the underlying arson.

■ However, the court did err in not awarding appellant precommitment credit time for actual time served pursuant to Penal Code section 2900.5. Welfare and Institutions Code section 6316.1, pursuant to which appellant's maximum term was calculated, expressly provides that the term imposed will be "less any applicable credits as defined by Section 2900.5 of the Penal Code . . . ." Appellant is entitled to credit for the actual time he spent in confinement, including the time he spent at Patton State Hospital and Tulare View Hospital during the suspension of criminal proceedings due to appellant's Penal Code section 1368 incapacity to stand trial. Respondent agrees with this conclusion. (See *People* v. *Sage* (1980) 26 Cal.3d 498, 502 [165 Cal.Rptr. 280, 611 P.2d 874]; *In re Banks* (1979) 88 Cal.App.3d 864, 870 [152 Cal.Rptr. 111]; *In re Jordan* (1975) 50 Cal.App.3d 155, 158 [123 Cal.Rptr. 268].)

■ We turn to the question of conduct credits. As noted above, *Saffell* held that Welfare and Institutions Code section 6316.1's preclusion of in-hospital conduct credits for MDSO's did not violate equal protection. The court reasoned as follows: "The purposes of the provision for 'good time' credits seem self-evident. First, and primarily, prisoners are encouraged to conform to prison regulations and to refrain from engaging in criminal, particularly assaultive, acts while in custody. Second,

section 2931, subdivision (c), induces prisoners to make an effort to participate in what may be termed 'rehabilitative' activities.

"While these twin goals are undoubtedly both appropriate and necessary in a prison setting, for several reasons they are not necessarily suitable within a hospital context.

"First, the very concept of 'giving' or 'taking away' time credits might materially interfere with other principles central to the operation of a therapeutic program. We cannot presume that hospital programs in general, and staff-patient relationships in particular, will benefit from a procedure in which patients are threatened with varying lengths of commitment dependent upon their in-hospital behavior. MDSOs are, by statutory definition, individuals who suffer from a 'mental disease, defect, or disorder.' The rationale of 'good time' credit as a reward for behavioral conformity does not readily fit the company of the mentally disturbed. The 'carrot or stick' approach represented by the extension or withdrawal of .credit as reward or punishment seems inconsistent with the goals of a hospital treatment facility.

"Second, if a patient intentionally acts in a disruptive manner in a hospital setting, he may be determined to be unamenable to treatment and transferred to state prison. This consequence, readily perceived, itself acts as a deterrent to intentional criminal conduct in the hospital setting.

"Third, at least part of the 'good time' may be earned by participation in prison rehabilitative and educational programs. It is not clear whether state hospitals currently even provide such 'work, educational, vocational [or] therapeutic' activities.

"Fourth, denial of 'good time' credits (pursuant to Pen. Code, § 2932) involves a whole panoply of administrative requirements, including a hearing. It is questionable whether hospital administrators have either the ability or the time, given an already burdensome workload, to comply with these additional procedures or whether the type of adversary proceeding which might result, contemplating written notice, investigation, hearing, etc., would assist in furthering the treatment program of the patient.

"Finally, it seems pointless to give an MDSO 'good time' credit against his medical commitment period because section 6316.2 allows

extension of the treatment period if found to be necessary. The concept of 'good time' credit only has meaning within the context of a fixed criminal sentence which may not be so extended." (*People* v. *Saffell, supra*, 25 Cal.3d at pp. 233-234.)

Because *Moye* held that persons committed to a state hospital for treatment under Penal Code section 1026 and MDSO's are similarly situated, it follows that the provisions of Welfare and Institutions Code section 6316.1 which preclude in-hospital conduct credits do not violate equal protection when applied to fix a maximum commitment under Penal Code section 1026. The instant case raises the issue whether equal protection nevertheless requires that a defendant ultimately committed to state hospital receive conduct credits for his confinement prior to that ultimate commitment.[3]

Amicus argues that the denial of conduct credits for this period conflicts with *People* v. *Sage, supra*, 26 Cal.3d 498, that the treatment rationale of *Saffell* does not apply because treatment does not commence until the ultimate state hospital commitment, and that "all county jail inmates, wherever they might end up, are entitled to goodtime credits during that custodial period."

Preliminarily, amicus bases its argument on the bland assumption that all confinement time prior to the ultimate state hospital commitment was spent in county jail. The record reveals that appellant spent a substantial period of time in Patton State Hospital because the trial court determined pursuant to Penal Code section 1368 that he was mentally incapable of standing trial. While at Patton State, appellant was manifestly not a county jail inmate or similarly situated therewith. Rather, he was receiving treatment and, as to this period, *Saffell*'s treatment rationale generally would apply.[4]

---

[3]Neither appellant nor amicus suggests that any statute creates the right to precommitment conduct credits. Welfare and Institutions Code section 6316.1 expressly excludes postcommitment conduct credits. The failure to also expressly exclude precommitment conduct credits creates no negative inference that such credits were legislatively intended. At the time section 6316.1 was adopted, presentence conduct credits did not exist for detainee/felons. Given that the Legislature did not want a section 6316.1 committee's maximum term reduced by postcommitment conduct credits granted a felon, it follows the Legislature did not intend a reduction for precommitment conduct credits which a felon did not then statutorily receive.

[4]Unlike in *Saffell*, a disruptive pretrial detainee would not face immediate transfer to prison. The other reasons cited in *Saffell* appear applicable.

Further, appellant spent time confined in Tulare View Hospital both before his Penal Code section 1368 commitment to Patton State Hospital and after his return while his competency was being reevaluated. Again, for these time periods, even though they preceded appellant's ultimate Penal Code section 1026 commitment to Patton State, appellant was not similarly situated with county jail inmates and the treatment rationale would be applicable.

We are left, then, with an unspecified period of jail time before appellant's section 1026 commitment. As to this period, it is accurate to observe that the treatment rationale of *Saffell* does not really apply. However, the final observation made in *Saffell* is as valid here as in *Saffell*, where the Supreme Court found the conduct credit concept rather incongruous within the context of Welfare and Institutions Code 6316.1.

Amicus argues that it is wrong to "retroactively deny" conduct credits which were earned when the precommitment detainee was similarly situated to all other jail inmates, when his ultimate commitment was unknown. We disagree. The question is not whether equal protection requires that conduct credits be *earned* but, rather, whether it requires that they be *awarded* against a section 1026 commitment. At the time of appellant's commitment to state hospital, he was not similarly situated vis-à-vis former fellow county jail detainees sentenced to state prison—or to county jail. That the latter receive credits under *Sage* and appellant does not receive such credits raises no equal protection problems.

Amicus implies that *People* v. *Sage* was based on the premise that detainee/felons are similarly situated vis-à-vis detainee/misdemeanants. Amicus thus implies that because detainee/misdemeanants receive conduct credits against eventual misdemeanor sentences, *Sage* held that detainee/felons were entitled to conduct credits against ultimate prison sentences. This implication is simply incorrect. *Sage* invalidated the distinction between detainee/felons and felons who served no presentence time: "Under section 4019, a pretrial detainee eventually convicted of a misdemeanor and sentenced to county jail, hereinafter referred to as a 'detainee/misdemeanant,' receives conduct credit against that sentence for his presentence jail time. Under section 2931, a defendant who makes bail or is released on his own recognizance, then is tried, convicted of a felony and sentenced to state prison receives conduct credit against his full sentence. Only the presentence detainee eventually sen-

tenced to prison, the 'detainee/felon,' does not receive conduct credit against his full sentence, because he is denied conduct credit for his presentence confinement. *It is the distinction between the detainee/felon and the felon who serves no presentence time that raises equal protection problems."* (*People* v. *Sage, supra*, 26 Cal.3d at p. 507, italics added.)

In the instant case, the disparity condemned by *Sage* does not exist. The defendant who serves no jail time prior to his Penal Code section 1026 commitment to state hospital receives no conduct credits against his maximum term of commitment. The detainee ultimately committed to state hospital under Penal Code section 1026 likewise does not receive conduct credits. On the other hand, to hold that equal protection requires an award of precommitment conduct credits to defendants ultimately committed to state hospital under Penal Code section 1026 would turn *Sage* on its head and reintroduce a disparity whereby only the detainee had his maximum term of commitment reduced by conduct credits.

For the reasons stated above we remain unconvinced that equal protection or due process requires an award of precommitment conduct credits for jail time to reduce the maximum term of a defendant committed to state hospital pursuant to Penal Code section 1026.

The judgment is affirmed. The Department of Developmental Services is directed to administratively determine and give appellant credit for precommitment time actually served pursuant to Penal Code section 2900.5.

Hanson (P. D.), J., and Andreen, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied September 10, 1981. Newman, J., was of the opinion that the petition should be granted.