Filed 9/11/20

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>     Petitioner,<br><br>     v.<br><br>THE SUPERIOR COURT OF SAN DIEGO COUNTY,<br><br>     Respondent;<br><br>CHRISTOPHER THOMPSON FREZIER,<br><br>     Real Party in Interest. | D077864<br><br>(San Diego County<br>Super. Ct. No. SCN386646) |

ORIGINAL PROCEEDINGS in mandate. Harry Elias, Judge. Petition denied.

Summer Stephan, District Attorney, Mark A. Amador, Nicole C. Rooney, and Matthew Greco, Deputy District Attorneys, for Petitioner.

No appearance by Respondent.

Angela Bartosik, Chief Deputy Public Defender, and Troy A. Britt, Deputy Public Defender, for Real Party in Interest.

## I.
## INTRODUCTION

In October 2019, Christopher Frezier was found not guilty by reason of insanity of a felony offense.  The trial court committed him to a state hospital pursuant to Penal Code section 1026.[1]  At the time of the commitment, the trial court calculated Frezier's maximum term of commitment as three years with credits for 829 days, consisting of credits for both the actual time served in custody prior to his commitment and conduct credits pursuant to section 4019 for the time spent in county jail.  Despite his commitment to a state hospital to receive treatment, Frezier was never transported to a hospital and instead, was left in the county jail for unknown reasons.  After spending almost one year in jail after his commitment, Frezier filed a petition for writ of habeas corpus asserting that he was entitled to immediate release because he had served his maximum term of commitment, after accounting for his precommitment custody and conduct credits combined with the additional time served in the county jail postcommitment.  The trial court agreed and granted relief, ordering that Frezier be released.

---

[1]    All further statutory references are to the Penal Code.

Seeking extraordinary relief and an immediate stay to prevent Frezier's release, the District Attorney filed a petition for writ of mandate and/or prohibition in this court raising a narrow legal issue of statutory interpretation that it did not raise at the time Frezier was committed. According to the District Attorney, Frezier is not entitled to section 4019 conduct credits under the relevant statutes. After issuing an order to show cause, receiving briefing from both the District Attorney and Frezier, and holding oral argument, we conclude that under the plain language of the relevant statutes, the calculation of the maximum term of commitment for persons committed to a state hospital pursuant to section 1026 includes credits for days served in actual custody and conduct credits pursuant to section 4019.

The District Attorney concedes that if this court determines that Frezier is eligible to receive section 4019 conduct credits, he is entitled to immediate release because he will have served his maximum term of commitment and there is no legal means to extend his current commitment. The District Attorney further concedes that because it did not timely file a petition for recommitment prior to the expiration of Frezier's commitment, it cannot now file such a petition to extend Frezier's commitment. Although the District Attorney suggests that an additional civil commitment is possible,

3

the question whether Frezier should be civilly committed is not before us in this writ petition.

We conclude that under the plain language of the relevant statutes, Frezier has served more than his maximum term of commitment and the District Attorney has failed to demonstrate any error warranting extraordinary relief. We must therefore deny the District Attorney's writ petition.

II.
FACTUAL AND PROCEDURAL BACKGROUND[2]

On May 17, 2018, Frezier was arrested and taken into custody. As asserted by the District Attorney in the writ petition, the Escondido police arrested Frezier after his mother reported that Frezier was behaving erratically, claiming that her cat was evil, and that he had stabbed the cat with a knife. Police arrived and found Frezier locked in the bathroom, where he had decapitated the cat.

---

[2] The District Attorney's writ petition is largely devoid of citation to any exhibits to support its factual assertions, likely because the exhibits that were submitted in support of the petition are minimal. A petitioner seeking extraordinary relief must provide an adequate supporting record to provide this court with a complete understanding of the case and the ruling under review. (Cal. Rules of Court, rule 8.486(b); see also *Sherwood v. Superior Court* (1979) 24 Cal.3d 183, 186-187.) Notwithstanding the minimal exhibits in support of the petition, it appears that the underlying facts of the proceedings involving Frezier are undisputed, allowing us to reach the narrow legal issue raised in the writ petition.

Days later, Frezier was arraigned on a felony complaint charging him with "hot prowl" residential burglary (§§ 459, 460, 667.5, subd. (c)(21)) and animal cruelty (§ 597, subd. (a).). At that time, Frezier pled not guilty.

Following the appointment of the public defender, criminal proceedings were suspended pursuant to section 1368 due to concerns about Frezier's sanity and his mental competence. On August 10, 2018, the trial court found Frezier not competent to stand trial and ordered him committed to the state hospital.

On June 3, 2019, the trial court found that Frezier's competence had been restored and the criminal proceedings were reinstated. Following the preliminary hearing, Frezier entered a plea of not guilty and not guilty by reason of insanity. Subsequently, two court-appointed doctors found that Frezier met the criteria for insanity at the time of the offense.

On September 18, 2019, Frezier entered a plea of not guilty by reason of insanity to the single offense of animal cruelty and the parties stipulated that he was not sane at the time he committed the offense. Accordingly, on October 22, 2019, the court ordered Frezier committed to Patton State Hospital pursuant to section 1026. The order of commitment states that Frezier's "maximum aggregate term of confinement for the underlying crime on which this commitment is based is three (3) years, with credit for time served of 829 days." In an accompanying minute order, the court included its

5

calculation of Frezier's credits, detailing that he was entitled to 523 days of credit for time in custody—consisting of 307 days in jail and 216 days in the state hospital while he was determined to be incompetent—and 306 days of conduct credits pursuant to section 4019 for the time spent in jail only. The record does not reflect that any party challenged the trial court's calculation of credits at the time of the order of commitment.

Despite his commitment to a state hospital, Frezier has remained in county jail for reasons not disclosed by the record.[3] On August 17, 2020, Frezier filed a petition for writ of habeas corpus in the trial court seeking immediate release. Relying on the trial court's calculation of his maximum term of commitment in the order of commitment, he stated that his maximum post-commitment term was 266 days. He further asserted that by the time he filed his writ petition, he had spent 295 days in custody since the time of the commitment order and that the time he had spent in custody therefore exceeded his maximum term of commitment. Accordingly, he asked the trial court to order his immediate release.

---

[3]     At the hearing on the writ petition, the trial court suggested that defendants committed to state hospitals were not being transferred to those hospitals because of the COVID-19 pandemic. The court did not address why Frezier was not transferred in the months before the pandemic hit California.

The trial court issued an order to show cause and, after receiving a return and supplemental return filed by the District Attorney and Frezier's reply, held a hearing on the writ petition.

The trial court ultimately granted relief, relying on the failure to transfer Frezier to the state hospital as a basis for finding that he was entitled to conduct credits under section 4019. The trial court denied the District Attorney's request for a stay to allow time to file a challenge to the ruling, suggesting that any stay must be sought in the appellate court.

The District Attorney filed a petition for writ of mandate in this court on the same day. We issued a stay of Frezier's release and an order to show cause to permit review of the writ petition.[4]

---

[4] The trial court's order granting Frezier's petition for habeas corpus was appealable by the District Attorney. (§ 1506.) Pursuant to section 1506, if the People appeal from an order granting the discharge or release of the defendant, "the defendant shall be admitted to bail or released on his own recognizance or any other conditions which the court deems just and reasonable, subject to the same limitations, terms, and conditions which are applicable to, or may be imposed upon, a defendant who is awaiting trial." Thus, the California Supreme Court has concluded that in some circumstances, the appellate remedy may be inadequate, warranting the filing of a petition for writ of mandate to secure a stay of the release, because the trial court's order "will result in the release of one potentially dangerous to the public." (*People v. Superior Court* (*Ghilotti*) (2002) 27 Cal.4th 888, 900, fn. 4.)

## III.
## DISCUSSION

The central issue raised in the District Attorney's petition for writ of mandate is the method for calculating the maximum term of commitment for a person committed to a state hospital after being found not guilty by reason of insanity pursuant to section 1026. Specifically, the parties dispute whether such a person is entitled to conduct credits pursuant to section 4019 for time spent in jail awaiting trial and before the order of commitment. As we will discuss, this dispute presents a question of law, requiring this court to ascertain the proper interpretation of the statutes governing the maximum term of commitment after being adjudged not guilty by reason of insanity. Thus, we consider the question independently under the de novo standard of review. (*People v. Salcido* (2008) 166 Cal.App.4th 1303, 1311 (*Salcido*).)

In our analysis of the applicable statutory scheme, we must first look at the " 'plain meaning of the words used and their juxtaposition by the Legislature [citation]; and we are bound to give effect to a statute according to the usual and ordinary import of those words. [Citation.] We may not add to or alter those words in order to accomplish a purpose that does not appear on the face of the statute or from its legislative history.' " (*Salcido*, *supra*, 166 Cal.App.4th at pp. 1310-1311.) " 'When used in a statute[,] words must be construed in context, keeping in mind the nature and obvious purpose of

8

the statute where they appear, and the various parts of a statutory enactment must be harmonized by considering the particular clause or section in the context of the statutory framework as a whole. [Citations.]' [Citation.] 'If the statutory language is unambiguous, "we presume the Legislature meant what it said, and the plain meaning of the statute governs." [Citations.]' " (*Id.* at p. 1311.)

A.   *The statutory framework for calculating the maximum term of commitment under section 1026.*

Pursuant to section 1026, when a person who pleads not guilty by reason of insanity is ultimately adjudged to have been insane at the time of the offense, "the court . . . shall direct that the defendant be committed to the State Department of State Hospitals for the care and treatment of persons with mental health disorders or any other appropriate public or private treatment facility approved by the community program director, or the court may order the defendant placed on outpatient status pursuant to [section 1600 et seq.]."

Section 1026.5 requires that trial court prepare and file an order of commitment establishing "the maximum term of commitment." (*Id.* at subd. (a)(1).) As defined in that section, " 'maximum term of commitment' shall mean the longest term of imprisonment which could have been imposed for the offense or offenses of which the person was convicted, including the upper

9

term of the base offense and any additional terms for enhancements and consecutive sentences which could have been imposed *less any applicable credits as defined by Section 2900.5*, and disregarding any credits which could have been earned pursuant to [section 2930 et seq.]." (*Ibid.*, italics added.) Thus, while a commitment to a state hospital is not a conviction and serves a purpose different from imprisonment, a person's maximum term of commitment is the same as the "longest term of imprisonment" that the trial court could have imposed if the person was being sentenced.

Section 2900.5, in turn, provides that a person's "term of imprisonment" must include credits for "all days of custody of the defendant, including days served as a condition of probation in compliance with a court order, credited to the period of confinement pursuant to Section 4019, and days served in home detention pursuant to Section 1203.016 or 1203.018." (§ 2900.5, subd. (a).)

Thus, by its plain language, section 2900.5 provides that a person in custody shall be awarded credits against his or her term of imprisonment for actual days of custody *and* for days (1) "served as a condition of probation in compliance with a court order"; (2) "credited to the period of confinement pursuant to Section 4019"; and (3) "served in home detention." The inclusion of conduct credits pursuant to section 4019 in the credits afforded by section 2900.5 has been endorsed by the Supreme Court, which held in *People v. Sage*

10

(1980) 26 Cal.3d 498 (*Sage*) that "Penal Code section 2900.5 imposes on the sentencing court the obligation to determine the number of days of custody *and, in those cases to which it expressly applies, conduct credit to which the defendant is entitled*." (*Id.* at pp. 508-509, italics added.) Similarly, in *People v. Buckhalter* (2001) 26 Cal.4th 20 (*Buckhalter*), the Supreme Court acknowledged the reference to section 4019 credits in section 2900.5 and indicated that the court is to include both custody credits and conduct credits at the time of sentencing. (*Buckhalter*, at pp. 30, 33 [citing section 2900.5 to hold trial court "has responsibility to calculate the exact number of days the defendant has been in custody 'prior to sentencing,' add applicable good behavior credits earned pursuant to section 4019, and reflect the total in the abstract of judgment."].)

Under section 4019, "[i]n addition to actual credit . . . detainees in local institutions are usually able to earn credit against their eventual sentence for good behavior and work performed." (*People v. Brown* (2020) 52 Cal.App.5th 899, 902-903.) Section 4019 provides that for each four-day period in which a prisoner is confined and has been on good behavior, the prisoner will receive two days of "conduct credits." (§ 4019, subds. (b), (c); see also *People v. Dieck* (2009) 46 Cal.4th 934, 939, fn. 3.) Thus, "a term of four days will be deemed

11

to have been served for every two days spent in actual custody."[5] (§ 4019, subd. (f).) Section 4019 conduct credits are available for inmates confined to a local facility, including a county jail, following arrest and before the imposition of a sentence for a felony conviction. (*Id.* at subd. (a)(4).)

Considered as a whole, these statutes impose a duty on the trial court to determine the maximum term of commitment in the same manner that it would calculate the longest term of imprisonment that could be imposed for the offense for which the person has been adjudged not guilty by reason of insanity. As defined by section 2900.5, a "term of imprisonment" must be reduced by actual custody credits *and* section 4019 conduct credits.

Once committed, the person found not guilty by reason of insanity is barred from receiving *post*commitment conduct credits in the same manner as a prison inmate, who would generally be eligible to receive conduct credits pursuant to section 2930 et seq. (§ 1026.5, subd. (a)(1) [person committed to state prison not eligible for "any credits which could have been earned pursuant to Article 2.5 (commencing with Section 2930) of Chapter 7 of Title 1 of Part 3."].)

When a person committed to a state hospital completes the maximum term of commitment, the person must be released unless the prosecuting

---

[5] The District Attorney does not contend that, assuming that section 4019 applies to Frezier, he otherwise failed to earn conduct credits due to poor conduct or that he would otherwise be ineligible for such credits.

attorney files a petition for an extension of the commitment, not later than 180 days prior to the termination of the maximum term of commitment, and demonstrates that the person, "by reason of a mental disease, defect, or disorder represents a substantial danger of physical harm to others." (§ 1026.5, subd. (b)(1).)

B.    *The trial court properly found that Frezier is entitled to precommitment conduct credits pursuant to section 4019.*

Based on the plain language of sections 1026.5, 2900.5, and 4019, the trial court awarded Frezier a total of 829 days of credit, consisting of 523 days of custody credits and 306 days of conduct credits pursuant to section 4019. The 306 days of conduct credits were awarded only for the time that Frezier spent in jail, not for any time spent in the state hospital before trial for restoration of competency. The order of commitment reflects these credits and states that Frezier's maximum term of commitment is three years, "with credit for time served of 829 days."[6]

In asserting that the trial court erred in awarding conduct credits, the District Attorney relies on a series of older decisions. In *People v. Smith* (1981) 120 Cal.App.3d 817 (*Smith*), *People v. Bodis* (1985) 174 Cal.App.3d 435 (*Bodis*), and *People v. Mord* (1988) 197 Cal.App.3d 1090 (*Mord*), the courts concluded that persons committed to a state hospital under section 1026 were

---

[6]    The parties do not dispute that three years is the correct upper term of Frezier's section 597 offense. (§§ 597, subd. (d); 1170, subd. (h)(1).)

13

not entitled to precommitment conduct credits. However, a careful consideration of these decisions reveals that they are premised on an application of the relevant statutes as they existed before significant amendments or otherwise overlooked the relevant statutes. As we discuss, we decline to follow these prior decisions because they did not consider the relevant statutes, *as amended* prior to Frezier's commitment.

An understanding of why these early decisions are no longer persuasive requires an understanding of the statutory context in which they were decided. In 1978, shortly before the decisions in question, the Supreme Court explained that under the statutes as they existed at that time, a person found not guilty by reason of insanity was committed to a state hospital pursuant to section 1026 for an undefined term meant to continue until sanity was restored. (*In re Moye* (1978) 22 Cal.3d 457, 461 (*Moye*).) In other words, the statutes did not envision a maximum term of commitment such that persons found not guilty by reason of insanity were "required to face indefinite confinement until they can establish their own fitness for release." (*Id.* at p. 463.) In *Moye*, the Supreme Court considered an equal protection claim arising from the disparate treatment of persons committed to a state hospital as a result of being found insane and others committed to state hospitals for different reasons, who were entitled to release after a specified term. (*Id.* at p. 467.) Finding no justification for the disparate treatment of similarly

14

situated persons, the court concluded that despite statutory provisions to the contrary, when a trial court commits a person to a state hospital pursuant to section 1026, that court must calculate a maximum term of commitment, after which the burden shifts to the People to establish a need for an extended commitment. (*Ibid.*)

In 1979, the Legislature responded to the *Moye* decision by passing section 1026.5, which created the statutory framework requiring the trial court to calculate a maximum term of commitment for persons adjudged not guilty by reason of insanity by determining the upper term of the base offense, plus any enhancements and consecutive sentences, "less any applicable credits as defined by Section 2900.5." (Stats. 1979, ch. 1114, p. 4051.)

Thereafter, in *Sage*, decided in 1980, the Supreme Court explained the relationship between section 2900.5 and section 4019 as those statutes were written at the time and as applied to convicted felons. As discussed *ante*, the *Sage* court explained that section 2900.5 provides for a calculation of credits toward a term of imprisonment including days in custody " '*and including days credited to the period of confinement pursuant to section 4019.*' " (*Sage, supra*, 26 Cal.3d at p. 502, italics added.) Important to the issues raised here, the Supreme Court explained that the first version of section 4019 authorized conduct credit for certain classes of inmates, including inmates

15

charged with misdemeanors, but did *not* permit conduct credits for precommitment jail time for those charged with felonies. (*Id.* at p. 504 ["A felon confined in jail awaiting trial . . . does not, therefore, come within the language of [section 4019]."].) The court held that despite this statutory scheme, the equal protection clause required that felons detained in jail prior to conviction receive section 4019 conduct credits. (*Id.* at pp. 508-509.)

The next year, in *Smith*, the Fifth District Court of Appeal considered this same statutory scheme as applied to persons committed to state hospitals after being adjudged not guilty by reason of insanity. In *Smith*, the defendant had been found guilty of arson—a felony—in 1979 and committed to a state hospital for a maximum term of four years. (*Smith, supra,* 120 Cal.App.3d at p. 820 & fn. 1.) The *Smith* court concluded that while the defendant had a statutory right to credits under section 2900.5 for his actual days in custody before the order of commitment, he was *not* entitled to precommitment conduct credits. (*Id.* at pp. 822-823.) Because the version of section 4019 that existed at the time did not permit an award of conduct credits for those found to have committed a felony—like the defendant in *Smith*—the court had no cause to engage in any analysis of a statutory right to section 4019 conduct credits. Instead, the *Smith* court concluded that the equal protection claim considered in *Sage* did not apply in the specific context of persons found not guilty by reason of insanity. (*Id.* at pp. 823-826.)

16

In 1982, *after* the decision in *Smith*, the Legislature amended section 4019 to authorize an award of conduct credits to felons for the time spent in jail after arrest and before imposition of sentence. (Stats. 1982, ch. 1234, p. 4553.) As amended, the new subdivision (a)(4) to section 4019 permitted an award of conduct credits for the period "[w]hen a prisoner is confined to a county jail, industrial farm, or road camp, or city jail, industrial farm, or road camp following arrest and prior to the imposition of sentence for a felony conviction." (See also *Buckhalter*, *supra*, 26 Cal.4th at p. 36 [discussing 1982 amendment to section 4019].)

In *Bodis*, the Court of Appeal revisited the same issue considered in *Smith* regarding the availability of precommitment conduct credits for persons committed to a state hospital after having been adjudged not guilty by reason of insanity. The defendant in *Bodis* was found not guilty by reason of insanity in 1983 and the trial court's order of commitment included an award of conduct credits for the time presumably spent in a *state hospital* before his ultimate commitment. (*Bodis, supra,* 174 Cal.App.3d at pp. 436-437.) As the maximum term of commitment was ending, the District Attorney raised a new challenge to the calculation and argued that the trial court had erred in awarding conduct credits. (*Id.* at p. 437.)

Although the *Bodis* court did not focus on the distinction between precommitment time spent in jail and time spent in a state hospital, it stated

17

that "[t]he Legislature has specifically denied conduct credits for those sentenced under Penal Code section 1026.5, subdivision (a)(1)." (*Bodis, supra,* 174 Cal.App.3d at p. 438.) To reach this conclusion, however, the *Bodis* court relied on section 1026.5's express instruction that " 'credits which could have been earned under Section 2930 to 2932, inclusive' " are to be disregarded. (*Ibid.*) Thus, although the defendant in *Bodis* was asserting a right to *pre*-sentence conduct credits, the court relied on the statutory language mandating that a court disregard *post*-sentence conduct credits, to support its conclusion, apparently without recognizing the distinct statutory schemes. (See, e.g., *People v. Brown* (2020) 52 Cal.App.5th 899, 902 ["Presentence and postsentence credit are distinct from one another and governed by 'independent ... schemes.' "].) The court in *Bodis* thus did not address the amendment to section 4019 to determine whether it required a departure from the reasoning in *Smith.*

In the present case, the District Attorney relies primarily on the Fifth District's decision in *Mord* to support its petition. In *Mord*, the defendant was found not guilty by reason of insanity of the offense of involuntary manslaughter and was committed to a state hospital for a maximum term of four years. (*Mord, supra,* 197 Cal.App.3d at p. 1097.) At the time of his commitment in 1980, he was awarded 386 days of custody credits and was not awarded any conduct credits. (*Ibid.*) Years later, in a dispute regarding

18

the timeliness of a recommitment petition, the defendant argued that he was entitled to precommitment conduct credit. (*Id.* at pp. 1098-1099.) After the trial court rejected his argument, the Fifth District revisited the issue that it had previously considered in *Smith*. (*Id.* at p. 1099.) In a single sentence of analysis, the *Mord* court relied on its prior decision in *Smith* to explain that it had already "rejected the argument that a defendant found insane pursuant to section 1026 is due precommitment conduct credits for the time spent in jail." (*Id.* at p. 1104.) The *Mord* court did not discuss the specific issue overlooked in *Bodis*—whether the award of credits under section 2900.5 included *pre*commitment conduct credits due under section 4019, or the new issue not considered in *Smith*—whether the amendment to section 4019 enacted after *Smith*, which extended the award of conduct credits to those charged with a felony, required a reconsideration of whether a person adjudged not guilty of a felony offense by reason of insanity is entitled to a statutory award of conduct credits. (*Ibid.*) Assuming no statutory right to precommitment conduct credits based solely on its previous analysis in *Smith*, the *Mord* court proceeded to reject an equal protection claim to the right to earn such conduct credits. (*Id.* at p. 1105.)

The failure of the *Mord* court to consider the statutory amendment to section 4019 after its earlier decision in *Smith* is fatal to its statutory interpretation of sections 1026.5, 2900.5, and 4019. While at the time of

19

*Smith* there was no statutory right to conduct credits for those charged with a felony, the statutory amendment that occurred after *Smith* extended the right to earn conduct credits to felons and therefore, changed the relevant statutory analysis. For these reasons, we decline to follow *Mord* and specifically, its reliance on *Smith,* to conclude that a person adjudged not guilty of a felony offense by reason of insanity is not entitled to section 4019 conduct credits. Neither party cites any case that has considered the issue since *Mord* and our own research reveals no published opinion discussing this issue.[7]

Based on the statutory scheme discussed *ante*, we conclude that the trial court properly awarded conduct credits to Frezier for the time he spent in jail before the order of commitment. Section 1026.5 requires that the trial court determine the maximum term of commitment, which it defines as being the same as the "longest term of imprisonment which could have been imposed for the offense or offenses of which the person was convicted." Pursuant to section 1026.5, the maximum term of commitment is calculated by including the maximum sentence that could have been imposed *and*

---

[7] The District Attorney also relies on *People v. Campos-Castillo* (1986) 176 Cal.App.3d 926, a decision predating *Mord*, cited for the first time in its reply. That opinion, however, merely relied on *Smith* with no additional discussion of the statutory right to precommitment conduct credits. (*Id.* at p. 930.) For the same reasons that we find *Mord* to be not persuasive, we decline to follow the decision in *People v. Campos-Castillo.*

awarding credits pursuant to section 2900.5, which in turn requires an award of credits against a term of imprisonment for all days served in custody *and* days "credited to the period of confinement pursuant to Section 4019." Because the 1982 amendment to section 4019 extended the right to earn conduct credits to those charged with a felony, like Frezier, such credits must be included in the calculation of credits under section 2900.5. (*Sage, supra,* 26 Cal.3d at pp. 508-509 ["Penal Code section 2900.5 imposes on the sentencing court the obligation to determine the number of days of custody and, in those cases to which it expressly applies, conduct credit to which the defendant is entitled"].)

In its reply and at oral argument, the District Attorney argued for the first time that even if a calculation of credits under section 2900.5 generally includes conduct credits pursuant to section 4019, Frezier does not meet the statutory requirements for an award of such credits. As the District Attorney notes, section 4019 authorizes conduct credits for persons in custody "following arrest and prior to the imposition of sentence for a felony conviction." (*Id.* at subd. (a)(4).) The District Attorney reasons that an acquittal based on a finding that the defendant is not guilty by reason of insanity is not a conviction (see, e.g., *People v. Morrison* (1984) 162 Cal.App.3d 995, 998), and because the trial court never imposed a "sentence" based on a "conviction," he is not entitled to section 4019 credits.

21

This argument is premised on an apparent ambiguity in section 1026.5, which provides that the maximum term of commitment "shall mean the longest term of imprisonment which could have been imposed for the offense or offenses of which the person was convicted . . . less *any applicable credits as defined by Section 2900.5*, and disregarding any [section 2930 et seq. credits]." (§ 1026.5, subd. (a)(1), italics added.) Arguably, as the District Attorney suggests, the phrase "applicable credits" can be interpreted as meaning credits that apply to a "maximum term of commitment" of a defendant adjudged not guilty by reason of insanity. If this were the correct interpretation, custody credits under section 4019, subdivision (a)(4) would not apply because, by the plain language of that subdivision, such credits apply only when there is an "imposition of sentence for a felony conviction." There is no dispute that no sentence was imposed and Frezier was not convicted. Thus, section 4019 credits would not "apply" to a maximum term of commitment.[8]

If we were to accept this interpretation, however, section 2900.5 custody credits would also not "apply" to a maximum term of commitment.

[8]    At oral argument, the District Attorney also argued that custody credits pursuant to subdivision (a)(8) of section 4019 would not apply to Frezier because he received pre-trial competency restoration treatment in a state hospital before his commitment, not in a county jail treatment facility. We do not disagree and note that Frezier did not receive section 4019 *custody* credits for this time spent at Patton State Hospital after being found not competent to stand trial. This issue is irrelevant to our ultimate decision.

22

Under section 2900.5, subdivision (a), custody credits apply "[i]n all felony and misdemeanor convictions" and "shall be credited upon [a defendant's] term of imprisonment." It follows that if section 1026.5 is interpreted to allow credits that are "applicable" only to a maximum term of commitment and *not* to a term of imprisonment following a conviction, then Frezier and all others committed to a state hospital after being found insane would not be entitled to receive custody credits under section 2900.5, subdivision (a), because, by its terms, section 2900.5, subdivision (a) applies only to the imposition of sentence for a felony conviction. This is obviously not the case and the District Attorney admits that Frezier is entitled to custody credits under section 2900.5. Thus, the District Attorney's argument that custody credits constitute "applicable credits under section 2900.5," but conduct credits do not, is internally inconsistent.

Moreover, accepting this interpretation would mean that no person committed pursuant to section 1026 would be eligible for *any* credits, because they are not "convicted" or "imprisoned." This would render the reference in section 1026.5 to "applicable credits as defined by Section 2900.5" entirely superfluous. "It is a maxim of statutory interpretation that courts should give meaning to every word of a statute and should avoid constructions that would render any word or provision surplusage. [Citations.] 'An interpretation that renders statutory language a nullity is obviously to be

23

avoided.' " (*Tuolumne Jobs & Small Business Alliance v. Superior Court* (2014) 59 Cal.4th 1029, 1038-1039.)

The more reasonable interpretation of section 1026.5 is that the phrase "applicable credits as defined by section 2900.5" means credits that would apply to the "longest term of imprisonment" referenced in section 1026.5. (*Id.* at subd. (a)(1).) Considering the statutory scheme in the proper context, as we must, we conclude that section 1026.5 requires that the trial court apply statutes that typically apply to sentencing—sections 2900.5 and 4019—to determine the "longest term of imprisonment" that could be imposed, which section 1026.5 establishes to be equal to the maximum term of commitment for a person adjudged not guilty by reason of insanity. The references to sentencing and convictions in these statutes are inapposite when applied in this context. It is undisputed that when a trial court is tasked with imposing the "longest term of imprisonment" for a person convicted of a felony, that term would include both custody credits and conduct credits. Since this same calculation forms the basis for determining the maximum term of commitment under section 1026.5, we conclude that Frezier is entitled to section 4019 credits despite the fact that he was not convicted or sentenced.

Concluding that Frezier has a statutory right to an award of precommitment conduct credits, we need not address his equal protection claims to the same credits. (See, e.g., *Elkins v. Superior Court* (2007) 41

24

Cal.4th 1337, 1357 [expressing " 'prudential rule of judicial restraint that counsels against rendering a decision on constitutional grounds if a statutory basis for resolution exists.' "].)

We similarly decline to consider Frezier's claim that he is entitled to conduct credits for the time (1) spent in a state hospital *before* his commitment[9] or (2) in jail *after* his order of commitment, because his release is not dependent on an award of such credits. The order of commitment, entered on October 22, 2019, set Frezier's maximum term of commitment at three years, with 829 days of credit that included both custody credits and precommitment conduct credits. The District Attorney's writ petition calculates Frezier's maximum term of three years as totaling 1,095 days, meaning that after the 829 days of credits are subtracted from that number, Frezier had 266 days left in his commitment at the time the order of commitment was entered. The trial court's order granting habeas corpus relief was entered on August 28, 2020—311 days after the order of commitment. Thus, regardless of any asserted right to additional credits,

___

[9] Frezier asserts that he is entitled to conduct credits for his pretrial time spent in a state hospital, where he was sent for treatment after having been found not competent to stand trial. To support this assertion, he relies on a recent amendment to section 1375.5. As amended, however, section 1375.5 permits an award of only *custody* credits for time spent in a treatment facility (subd. (a)) and an award of *conduct* credits pursuant to section 4019 "for all time during which he or she is confined in a county jail" (subd. (c)). Section 1375.5 does not appear to include a provision for awarding pretrial conduct credits for time spent in a treatment facility.

25

Frezier has exceeded his maximum term of commitment and the trial court did not err in ordering his release. As the District Attorney concedes, if Frezier is entitled to his precommitment custody credits, there is no legal basis for his continued commitment or other confinement at this time.

## IV.
## DISPOSITION

The petition for writ of mandate and/or prohibition is denied. The stay issued by this court on August 28, 2020 will expire upon finality of this opinion. The opinion will be final as to this court five days after the date of filing. (Cal. Rules of Court, rule 8.490(b)(2)(A).)

AARON, J.

WE CONCUR:

BENKE, Acting P. J.

IRION, J.

26